JEAN E. WILLIAMS
Deputy Assistant Attorney General
LUTHER L. HAJEK, CO Bar No. 44303
JOHN S. MOST, VA Bar No. 27176
Trial Attorneys
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th St., S. Terrace – Suite 370
Denver, CO 80202
Tel.: (303) 844-1376
Email: luke.hajek@usdoj.gov

NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
HOLLY A. VANCE
Assistant United States Attorney
100 W. Liberty Street, Ste. 600
Reno, NV 89501
Tel.: (775) 784-5438
Email: Holly.A.Vance@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | )<br>)<br>) |
| Plaintiffs | Case No: 3:17-cv-00553-LRH-WGC |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF JUDGMENT** |
| UNITED STATES BUREAU OF LAND MANAGEMENT, et al, | |
| Defendants. | |

**INTRODUCTION**

Plaintiffs' motion for reconsideration of the Court's summary judgment ruling should be denied. Plaintiffs argue that the preparation of an environmental impact statement ("EIS") is always required at the time the U.S. Bureau of Land Management ("BLM") makes oil and gas leasing decisions. This argument is based on a misinterpretation of *Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988) and ignores BLM's multi-stage oil and gas leasing process and the various analyses that process entails. Here, in accordance with its longstanding practice and 43 C.F.R. § 1601.0–6, BLM prepared an EIS at the time it issued the relevant resource management plans ("RMP"), at which point it decided to make available certain areas for oil and gas leasing. Then at the leasing stage, BLM prepared an environmental assessment ("EA") which analyzed the impacts of the leasing decision, as well as the reasonably foreseeable impacts of subsequent oil and gas development to an appropriate degree at that stage. This process complied with the National Environmental Policy Act ("NEPA"); the Court found that the EA's analysis showed a hard look at the potential environmental impacts of the challenged oil and gas leasing decision and was supported by the record, and therefore the preparation of an EIS was not required. Plaintiffs' argument that another EIS was nevertheless required at the leasing stage should be rejected.

**LEGAL STANDARD**

Plaintiffs' motion is brought under Rule 59(e). *See* Fed. R. Civ. P. 59(e). Under the rule, "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration is not an opportunity to rehash arguments that were previously raised in the litigation. *See Bundorf v. Jewell*, 142 F. Supp. 3d 1133, 1137 (D. Nev. 2015). Reconsideration under Rule 59(e) is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll. v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Such a motion may not be used to raise new arguments or present new evidence which could have been presented earlier. *Id.*

**ARGUMENT**

Plaintiffs' motion should be denied because it offers the same argument based on the Ninth Circuit's opinion in *Conner* that it presented during summary judgment briefing. As discussed below, Plaintiffs misinterpret that holding, and BLM was not required to prepare an additional EIS at the leasing stage. Defendants suggest, however, that the court revise its opinion to remove reliance on the recent decision in *Fisheries Survival Fund v. Jewell*, No. 16-cv-2409 (TSC), 2018 WL 4705795 (D.D.C. Sept. 30, 2018), because that case was decided under a different statutory and regulatory scheme.

**I.  BLM Is Not Required to Prepare an EIS at the Oil and Gas Leasing Stage, and BLM Complied With NEPA With Respect to the Challenged Leasing Decisions**

BLM is not required to prepare a separate EIS at the time it makes an oil and gas leasing decision. Instead, whether an EIS is required at the leasing stage depends on whether a NEPA document was prepared at an earlier (usually land use planning stage), the scope and coverage of any previously prepared NEPA document together with the NEPA document prepared for the leasing decision, and, critically, whether the potential environmental impacts of the leasing decision will be significant. *See* Defs.' Mem. in Supp. of Summ. J. at 1-3 (ECF No. 50). BLM employs a three-stage decision-making and NEPA process in connection with oil and gas leasing. *Id.* at 3-5. A court may review the sufficiency of that NEPA analysis at each stage of the process, while considering prior NEPA analyses and recognizing that more specific NEPA analyses may be conducted at a later stage of the process. *See N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 977 (9th Cir. 2006).

Relying on *Conner*, Plaintiffs argue that BLM must always prepare an EIS at the leasing stage. Their argument oversimplifies the holding in *Conner* and ignores the multi-stage leasing process employed by BLM. In *Conner*, the Ninth Circuit held that the issuance of a non-no surface occupancy ("non-NSO") lease was an irreversible and irretrievable commitment of resources triggering the requirement to comply with NEPA. *See Conner*, 848 F.2d at 1449-50. The Ninth Circuit also held that the EA prepared for the oil and gas leases at issue in that case was insufficient and that an EIS was required. *See id.* But *Conner* does not stand for the

proposition that BLM must prepare an EIS at the leasing stage in all instances. *See N. Plains Res. Council v. U.S. Bureau of Land Mgmt.*, 298 F. Supp. 2d 1017, 1022 (D. Mont. 2003) (distinguishing *Conner* on the basis that BLM had previously prepared an EIS in conjunction with an RMP).[1]

As we demonstrated in our briefing, *Conner* is similarly distinguishable here because BLM prepared EISs in association with the Tonopah and Shoshone-Eureka RMPs. *See* Defs.' Reply in Supp. of Summ. J. at 20-21 (ECF No. 57). Those RMPs identified the areas subject to the June and September 2017 lease sales as open for oil and gas leasing and established goals and objectives for leasing. *Id.* The associated EISs, in turn, analyzed the potential environmental impacts of oil and gas development in those areas on a programmatic level. *See id.* Therefore, to the extent that *Conner* can be interpreted to mean that the preparation of an EIS is required before offering areas for leasing, any such requirement was satisfied here by the preparation of the EISs associated with the Tonopah and Shoshone-Eureka RMPs. In other words, the preparation of an EIS at an earlier stage, not contemporaneous with the leasing decision, is consistent with *Conner*.

Further, *Conner* does not diminish BLM's authority to evaluate the impacts of an oil and gas leasing decision in an EA and to determine, in appropriate circumstances, that the leasing decision will not have significant impacts on the environment. The Tenth Circuit has more clearly articulated the NEPA requirement at the leasing stage, stating that at the lease stage BLM "was required to analyze any foreseeable impacts" of a leasing decision, not that an EIS necessarily was required. *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 718 (10th Cir. 2009). Thus, while the requirement to comply with NEPA is triggered when BLM decides to offer non-NSO parcels for oil and gas leasing, BLM may still reasonably conclude after preparing an EA that the impacts of the proposed oil and gas leasing decision will

---

[1] *See Chihuahuan Grasslands All. v. Norton*, 507 F. Supp. 2d 1216, 1222 (D.N.M. 2007) (noting that, in *Conner*, BLM had prepared only "several EA's to support its oil and gas leasing decision," not an EIS), *vacated as moot sub nom. Chihauhaun Grasslands All. v. Kempthorne*, 545 F.3d 884 (10th Cir. 2008).

3

not be significant.  *See*, *e.g.*, *Blue Mountains Diversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir. 1998) ("As a preliminary step, an agency may prepare an EA to decide whether the environmental impact of a proposed action is significant enough to warrant preparation of an EIS.") (citing 40 C.F.R. § 1508.9).[2]

Moreover, the primary issue in *Conner* was one of timing, and the decision was based on facts that are not present here.  The government argued that the obligation to comply with NEPA (*i.e.*, to prepare on EIS) had not ripened because it maintained the authority to require lease stipulations that would prevent significant impacts on the environment.  *See* 848 F.2d at 1445.  The court accepted that proposition with respect to NSO leases (leases that do not allow surface disturbance), holding "that the sale of an NSO lease cannot be considered the go/no go point of commitment at which an EIS is required." *Id.* at 1448.  With respect to non-NSO leases, however, because such leases do not reserve the right to preclude development altogether, they do constitute an irreversible commitment of resources and trigger the obligation to comply with NEPA.  *See id.* at 1450.  The court stated that an "EIS" was required, but the finding should be viewed in the context of the case before it.  The EA in that case found that no significant impacts would occur because the leasing decision itself would result in no ground disturbing activity and any significant impacts from development could be avoided through lease stipulations.  *See id.* at 1446.  While the Plaintiffs in this case attempted to portray the EA in this case as similarly devoid of analysis of the potential impacts of lease development, as the Court correctly found, the EA was not so limited.  *See* Jan. 15, 2019 Order at 7-9.  BLM did not improperly postpone its analysis of the oil and gas development, as Plaintiffs claimed, and therefore the EA at issue here is unlike the EA at issue in *Conner*.

Accordingly, Plaintiffs are wrong that BLM was required to prepare a separate EIS at the leasing stage for the Nevada lease sales.  Plaintiffs made several arguments in merits briefing about the sufficiency of the EA, including the argument that an analysis of the significance

---

[2] Even in *Conner*, the Ninth Circuit recognized in the background section that the preparation of an EA to determine whether the environmental impacts of an action would be significant is a valid procedure for complying with NEPA.  *See Conner*, 848 F.2d at 1446.

4

factors in the NEPA regulations mandated an EIS, and all of those arguments were rejected by the Court. *See* Jan. 15, 2019 Order at 7-21. Plaintiffs also argued that, notwithstanding their other arguments, an EIS is *per se* required at the leasing stage by the Ninth Circuit's decision in *Conner*. This is the same argument they press in their motion for reconsideration and, therefore, it should be rejected as a rehash of their prior arguments. *See Bundorf*, 142 F. Supp. 3d at 1137. In any event, it should also be rejected for the reasons discussed above, namely, that *Conner* is distinguishable on the ground that, in this case, EISs were prepared prior to leasing in conjunction with the relevant RMPs, and *Conner* does not mandate the preparation of additional EISs where an agency prepares an appropriate EA and determines that its proposed action will not have significant impacts on the environment not already considered in an EIS.[3]

More broadly, Plaintiffs' argument is an attack on BLM's multi-stage leasing process and should be rejected. In several instances, courts have upheld BLM's issuance of oil and gas leases issued in accordance with BLM's multi-stage process and without the preparation of an EIS at the leasing stage. *See N. Plains Resource Council v. U.S. Bureau of Land Mgmt.*, 298 F. Supp. 2d at 1024 (upholding oil and gas leases issued pursuant to a previously prepared RMP/EIS); *S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 250 F. Supp. 3d 1068 (D. Utah 2017) (upholding an EA for an oil and gas lease sale) (appeal pending); *cf. N. Plains Resource Council v. U.S. Bureau of Land Mgmt.*, No. CV 14-60-BLG-SPW, 2016 WL 1270983, at *14 (D. Mont. Mar. 31, 2016) (upholding an EA for a coal leasing decision), *aff'd*, 725 Fed. Appx. 257 (9th Cir. 2018).[4] Thus, courts have upheld BLM's practice of preparing EISs at the RMP stage and subsequently preparing EAs at the oil and gas leasing stage.

---

[3] Plaintiffs misleadingly suggest that Defendants argued that an EIS was not required because mitigation in future drilling permits would allow BLM to deny oil and gas development. *See* Pls.' Mot. for Reconsideration of Judgment at 7 (ECF No. 60). That is not what we argued. In the cited portion of Defendants' reply, we argued that site-specific analysis could be left to a later stage when BLM considers applications for permits to drill. *See* Defs.' Reply in Supp. of Mot. for Summ. J. at 3 (citing *N. Alaska*, 457 F.3d at 977). We did not argue that BLM could forgo analyzing impacts altogether.

[4] *See Biodiversity Cons. All.*, 183 IBLA 97, 113-25 (2013) (upholding an EA for an oil and gas lease sale); *Montana Trout Unlimited*, 178 IBLA 159, 166-72 (2009) (upholding a determination

5

Even in instances where courts have found that an EA for an oil and gas leasing decision was insufficient to comply with NEPA, they have done so, not because an EIS is always required at this stage, but because they found inadequacies in the EA that was prepared. *See Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 937 F. Supp. 2d 1140, 1152 (N.D. Cal. Mar. 31, 2013). Analyzing *Conner*, the court in *Center for Biological Diversity* stated correctly that the issuance of a non-NSO lease "triggers NEPA review." *Id.* at 1153. Notably, the court did not adopt Plaintiffs' position here that an EIS is always required once the NEPA obligation is triggered; instead, the court stated that, once NEPA is triggered, BLM must conduct a NEPA analysis to determine whether the leasing decision will have significant environmental impacts. *Id.* The court then went on to analyze whether BLM's EA and finding of no significant impact were supported by the record in that case. *See id.* at 1159. In other words, although the court ultimately found that the EA in that case was insufficient, it did so after determining that the analysis in the document was insufficient to comply with NEPA, not by adopting Plaintiffs' view here that an EIS is always required at the oil and gas leasing stage.

In sum, Plaintiffs take *Conner* too far in arguing that BLM must always prepare an EIS at the oil and gas leasing stage. BLM's EA and FONSI for the Nevada lease sales are supported by the record and should be upheld, and therefore Plaintiffs' motion for reconsideration should be rejected.

**II.    The Court's Judgment is Sound, But Defendants Suggest Revising the Summary Judgment Opinion to Better Reflect Defendants' Arguments**

In its summary judgment opinion, rather than adopt the rationale offered by Defendants, the Court relied on *Fisheries Survival Fund v. Jewell*, 2018 WL 4705795. That case involved a regulatory scheme that is distinct from the oil and gas leasing process at issue in this case, and therefore Defendants suggest that the Court's opinion be modified to remove reliance on that case.

---

of NEPA adequacy ("DNA") for a lease sale); *Town of Crestone*, 178 IBLA 79, 83-87 (2009) (upholding a DNA for a lease sale).

6

In *Fisheries Survival Fund*, groups representing commercial fishing interests challenge the Bureau of Ocean Energy Management's ("BOEM") issuance of an offshore wind lease to a wind energy developer. *See id.* at *1. The applicable regulatory scheme allows an applicant to seek a lease for the exclusive right to submit a site assessment plan for evaluating the wind resource in the area and subsequently—after gathering data on wind, the subsurface environment, and other factors—submit a plan for the construction and operation of a wind energy facility. *See id.* at *2. Crucially, the applicable regulations and the lease reserve BOEM's right to reject a construction and operations plan outright. *Id.* Based on the regulations and the lease, and after considering *Conner* and the D.C. Circuit's decision in *Sierra Club v. Peterson*, 717 F.2d 1409 (D.C. Cir. 1983), the court concluded that BOEM had not irreversibly and irretrievable committed resources towards the construction of a wind energy facility, and therefore BOEM's obligation to comply with NEPA had not ripened. *See id.* at *6-10. This decision was based on the BOEM's regulatory scheme for offshore wind leasing and the language of BOEM's lease, and the court distinguished cases that involved oil and gas leasing. *See id.* at *9 n.7.

Because the *Fisheries Survival Fund* case is based on a different statutory and regulatory scheme, Defendants suggest that the Court's summary judgment opinion be modified to remove reliance on that case and to instead rely on Defendants' arguments set forth above.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration should be denied.

Dated: February 26, 2019              Respectfully submitted,

JEAN E. WILLIAMS
Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

*/s/ Luther L. Hajek*
LUTHER L. HAJEK, CO Bar No. 44303
Trial Attorney
Natural Resources Section
999 18th St., S. Terrace – Suite 370
Denver, CO 80202

7

|    |    |
|----|----|
| 1  | Tel.: (303) 844-1376 |
| 2  | Fax: (303) 844-1350 |
|    | Email: luke.hajek@usdoj.gov |

*/s/ John S. Most*
JOHN S. MOST, VA Bar No. 27176
Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel.: (202) 616-3353
Fax: (202) 305-0506

NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
HOLLY A. VANCE
Assistant United States Attorney
100 W. Liberty Street, Ste. 600
Reno, NV 89501
Tel.: (775) 784-5438
Email: Holly.A.Vance@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

  I certify that a copy of the foregoing is being filed with the Clerk of the Court using the CM/ECF system, thereby serving it on all parties of record on February 26, 2019.

            /s/ *Luther L. Hajek*
            LUTHER L. HAJEK
            U.S. Department of Justice
            Environment and Natural Resources Division

            *Counsel for Defendants*