JULIE CAVANAUGH-BILL (NV Bar No. 11533)
Cavanaugh-Bill Law Offices, LLC
Henderson Bank Building
401 Railroad Street, Suite 307
Elko, Nevada 89801
Tel: (775)753-4357
Email: Julie@cblawoffices.org

CLARE LAKEWOOD (CA Bar No. 298479), *pro hac vice*
MICHAEL SAUL (CO Bar No. 30143), *pro hac vice*
Center for Biological Diversity
1212 Broadway, # 800
Oakland, CA 94612
Tel: (510) 844-7121
Email: clakewood@biologicaldiversity.org

*Attorneys for Plaintiffs*
*Center for Biological Diversity and Sierra Club*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, and SIERRA CLUB<br><br>        Plaintiffs,<br><br>    v.<br><br>U.S. BUREAU OF LAND MANAGEMENT; DAVID BERNHARDT, in his capacity as Acting Secretary of the Department of the Interior; and BRIAN STEED, in his capacity as Deputy Director of the Bureau of Land Management,<br><br>        Defendants. | Case No. 3:17-cv-00553<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF JUDGMENT** |

**INTRODUCTION**

In its Order, this Court correctly concluded that an EIS must be prepared before BLM loses the power to prohibit all surface activity on an oil and gas lease, but incorrectly concluded, contrary to controlling Ninth Circuit precedent, that BLM retains such power when it issues an oil and gas lease with no stipulation retaining the right to preclude occupancy of the surface (a "non-NSO lease"). Order 22, 23-34, ECF No. 58. In its Opposition, Defendants Bureau of Land Management, et al. ("Defendants") do not dispute that the Court erred in concluding that BLM can prevent all surface activity once it has issued a non-NSO lease. Defendants agree that the court should not rely on *Fisheries Survival Fund v. Jewell*, 2018 U.S. Dist. LEXIS 168532 (D.D.C. Sept. 30, 2018) ("*Fisheries Survival Fund*") for the erroneous proposition that BLM has the power to prevent all surface disturbance on a non-NSO onshore oil and gas lease, because that case was decided under a different statutory and regulatory regime. Oppn to Mtn. for Reconsideration 6-7, ECF No. 62. Defendants' Opposition is based only on the erroneous argument that this Court was wrong to conclude that an EIS is required when the government issues a lease that does not prohibit all surface activity. That is, in an effort to avoid an adverse judgment, BLM asks the Court to disregard its correct conclusions of law, and thereby commit fresh errors. The Court should decline this invitation.

**ARGUMENT**

As this Court correctly found, in *Connor v. Burford*, "the Ninth Circuit held that any time that there has been an 'irreversible commitment of resources'—i.e. when the government issues a lease that does not prohibit all manner of surface activity—the government must prepare an EIS." Order 22, ECF No. 58, citing *Connor v. Burford*, 848 F.2d 1441, 1449-1550 (9th Cir. 1988) ("*Conner*"). This is because "an EIS must be prepared as long as 'substantial questions' remain as to whether the measures will completely preclude significant environmental effects. *Id.* at 1450.

Multiple circuits agree that the irretrievable commitment of resources in a non-NSO oil and gas lease raises the prospect of significant, irreversible impacts such that the agency must comply with NEPA prior to issuance. *Sierra Club*, 712 F.2d at 415; *N.M. ex rel. Richardson v. BLM,* 565

F.3d 683, 718 (10th Cir. 2009) (because non-NSO lease is irretrievable commitment of resources, BLM must next consider whether environmental impacts were foreseeable. Where development is foreseeable, site-specific analysis of impacts is required); *Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999) (for onshore oil and gas leases, "the point of irreversible and irretrievable commitment of resources and the concomitant obligation to fully comply with NEPA" arises when lease is issued).

Because non-NSO leases "do not reserve to the government the absolute right to prevent all surface-disturbing activity" (*Conner*, 848 F.2d at 1449), as a matter of law, the issuance of an oil and gas lease raises substantial questions about significant impacts that must be analyzed in an EIS. "[E]ven if there is a chance that regulation of surface-disturbing activities will render insignificant the impacts of those activities, that possibility does not dispel substantial questions regarding the government's ability to adequately regulate activities which it cannot absolutely preclude." *Id.* at 1450. This is because "the sale of non-NSO leases entail[s] an irrevocable commitment of land to significant surface-disturbing activities, including drilling and roadbuilding." *Id.* at 1449 (citing *Sierra Club v. Peterson*, 717 F.2d 1409, 1414-15 (D.C. Cir. 1983) ("*Sierra Club*")). This Court also acknowledges the substantial questions that remain regarding significant impacts must be addressed prior to surface-disturbing activities commence. Order 23-24, ECF No. 58 ("If BLM decides to grant an APD at that stage, it will be required to prepare an EIS (and comply with any other NEPA procedures) because it no longer has the authority to prevent the lessee from engaging in surface disturbing activity"). Under controlling Ninth Circuit precedent, an Environmental Impact Statement is required prior to leasing. Because the sale of non-NSO oil and gas leases is, precisely as in *Conner* and *Sierra Club*, the when the irretrievable commitment of resources occurs, and the question of impacts arises, the EIS cannot be deferred to a later stage. *Connor,* 848 F.2d at 1450.

Other courts have recognized this obligation also. As defendants agree (*see* Defs.' Oppn. To Mtn. for Reconsideration 7, ECF No. 62), the *Fisheries Survival Fund* decision explicitly distinguished its factual scenario from cases involving the statutory and regulatory regime governing onshore, non-NSO oil and gas leases. As that court characterized the issue, "issuing non-NSO oil

and gas leases effectively trade[s] the authority to *preclude* all activity for the authority to *regulate* that activity, and such a trade require[s] an EIS." *Fisheries Survival Fund*, 2018 U.S. Dist. LEXIS 168532, *26 (emphasis in original); *see also Friends of Southeast's Future v. Morrison*, 153 F.3d 1059, 1063 (9th Cir. 1998) (*"Friends of Southeast's Future"*) ("'non-NSO leases'… cannot be sold without preparation of an EIS, because non-NSO leases represent an irretrievable commitment of resources"); *Sierra Club*, 717 F.2d at 1415 ("If the Department chooses not to retain the authority to *preclude* all surface disturbing activities, then an EIS assessing the full environmental consequences of leasing must be prepared at the point of commitment" (emphasis in original)); *Wyo. Outdoor Council*, 165 F.3d at 49 (same).

Defendant mischaracterize  Plaintiffs' support for this Court's correct conclusion that an EIS is required when BLM no longer retains the power to prohibit all surface activity on a lease as "an attack on BLM's multi-stage leasing process."[1] Defendants thus invite the Court to disregard *Conner* in in favor of reliance on a series of district court decisions that are of no assistance. *S. Utah Wilderness All. v. United States DOI*, 250 F. Supp. 3d 1068 (D. Utah 2017) has a distinctly different fact pattern: in that case BLM prepared an EIS for the RMP, then a full EIS specifically analyzing the impacts of developing oil and gas wells in the geographic area that included the leases at issue, followed by an EA for nine particular leases included in the second EIS analysis. *Id.* at 1076. Thus whether the agency was required to prepare an EIS specific to oil and gas leasing in the area was not at issue, and the relevant case law not considered. *N. Plains Res. Council v. U.S. BLM*, No. CV 14-60-BLG-SPW, 2016 U.S. Dist. LEXIS 43947 (D. Mont. Mar. 31, 2016) also does not discuss *Conner*. That case concerned a coal lease, which is not subject to the same regulatory regime as oil and gas leases. Under the distinct regime applicable to coal mining, a separate agency—the Office of Surface Mining Reclamation and Enforcement—retains final authority to approve or deny mining of

---

[1] Defendants further suggest that Plaintiffs are misreading *Connor* to argue that BLM must, in every case, prepare a separate EIS at the leasing stage. Defs.' Oppn. to Mtn. for Reconsideration 4, ECF No. 62. Defendants mischactertize Plaintiffs' argument. There may be cases where a prior planning, programmatic, or other pre-leasing EIS may disclose and analyze environmental consequences in sufficient detail to allow tiering and preclude the necessity of a lease-specific EIS. This is not, however, such a case.

federal coal. *See* 30 C.F.R.pt 746; *N. Plains Res. Council*, 2016 US Dist. LEXIS 43947 at \*25-26.
Accordingly, the issues here, specific to non-NSO oil and gas leases, did not arise. Finally, the court
in *Ctr. for Biological Diversity & Sierra Club v. BLM*, 937 F. Supp. 2d 1140 (N.D. Cal. 2013), citing
approvingly to *Conner*, concluded that an EIS was required for the sale of non-NSO leases where the
EA in question was inadequate. *Id. at* 1152-1153. This conclusion plainly does not and cannot
undermine the fundamental—and controlling—holdings of *Conner, Friends of Southeast's Future*
and *Sierra Club*.[2]

Alternate to their request that this Court discard its own proper conclusions and the clear
language of the Ninth Circuit, Defendants argue that BLM satisfied the requirement to prepare an
EIS because, decades ago, BLM prepared programmatic EISs for the two Resource Management
Plans ("RMPs") guiding the uses of the Lease Area. Defs.' Oppn. To Mtn. for Reconsideration 3,
ECF No. 62 ("to the extent that *Conner* can be interpreted to mean that the preparation of an EIS is
required before offering areas for leasing, any such requirement was satisfied here by the preparation
of the EISs associated with the Tonopah and Shoshone-Eureka RMPs"). Reliance on a decades-old,
extremely general programmatic RMP EIS, which does not acknowledge any of the particular areas
and resources threatened by specific leasing decisions, cannot possibly satisfy the mandates of
NEPA to analyze the impacts of the lease sale. While NEPA requires that the impacts of a project
take place early in the planning process, that requirement is "tempered, though, by the statutory
command that we focus upon a proposal's parameters as the agency defines them" and a "preference
to defer detailed analysis until a concrete development proposal crystallizes the dimensions of a
project's probable environmental consequences." *California v. Block*, 690 F.2d 753, 761 (9th Cir.
1982). That moment comes when an agency proposes "an irreversible and irretrievable commitment

---

[2] This Court owes no deference to the IBLA cases that BLM cites in its footnote. *Park Cty. Res.
Council, Inc. v. United States Dep't of Agric.*, 817 F.2d 609, 620 (10th Cir. 1987), overruled in part
by *Amigos Bravos v. United States BLM*, No. CIV 09-0037 RB/LFG, 2010 U.S. Dist. LEXIS 146962
(D.N.M. Feb. 9, 2010) ("deference to agency expertise is inapplicable in the NEPA context.
The deference envisioned under this rationale is appropriate when the disputed issue is one expressly
delegated to an agency that deals exclusively with the area and so has refined an expertise in its
nuances. *All* federal agencies are required under NEPA to prepare an EIS if a proposed action meets
the statutory criteria. No single agency has expertise in determining whether an EIS is statutorily
mandated in a given instance").

of the availability of resources." *Friends of Southeast's Future*, 153 F.3d at 1063 (citing

*Environmental Defense Fund, Inc. v. Andrus*, 596 F.2d 848, 852 (9th Cir. 1979)). In the context of

non-NSO leases, the irretrievable commitment of resources comes not when BLM develops an RMP

for an area, but when BLM decides to offer for sale non-NSO leases. *Conner*, 848 F.2d at 1449 (sale

of non-NSO leases is irretrievable commitment of resources requiring an EIS because such sale

results in the prospect of impacts that cannot be avoided); *Friends of Southeast's* Future, 153 F. 3d at

1063 (same); see *also New Mexico ex rel. Richardson v. Bureau of Land Mgmt.,* 565 F.3d at 716,

718 (rejecting argument that NEPA requires only an EIS at the RMP stage, and when an application

for a permit to drill is made). This is so because BLM retains the discretion to not lease land for oil

and gas development even after the agency has decided in a management plan that such land is open

to leasing. *Western Energy Alliance v. Salazar*, 709 F.3d 1040, 1044 (10th Cir. 2013) (Secretary of

Interior has discretion to decide whether to lease land which may contain oil or gas deposits).

Even if *Conner* somehow stands for the proposition that a pre-leasing EIS can theoretically

fulfill BLM's obligation to analyze the potential environmental impacts of issuing non-NSO leases

(which it does not), the two RMPs here—prepared 21 and 32 years ago respectively (AR05666-

67)—certainly do not. Where "an EIS assessing the full environmental consequences of leasing must

be prepared at the point of commitment" (*Conner*, 848 F.2d at 1451 (quoting *Sierra Club*, 717 F. 2d

at 1415)), EISs that "contain outdated information," and which this Court has already correctly

concluded are likely inadequate to meet the "hard look" standard NEPA requires, cannot be deemed

to fulfill BLM's obligation under NEPA. Order 12, ECF No. 58.

BLM relies on an inapposite district court of Montana case, *Northern Plains Resource*

*Council v. United States. BLM*  298 F. Supp. 2d 1017, 1020 (D. Mont. 2003) ("*Northern Plains*")*,* to

support its argument. First, in that case the EIS in question was not the EIS prepared for the RMP

generally, but a subsequent, supplemental EIS "devoted entirely to the impacts of oil and gas

leasing" in the area at issue. *Id.* at 1020. Here, in contrast, BLM has not prepared *any* EIS devoted

specifically to the impacts of oil and gas development in the Lease Area, even though BLM admitted

that it must undertake "supplemental analysis of new information and changes in environmental

conditions since these RMPs were approved, such as increased growth, locations of special status species, identification of traditional cultural properties, and recognition of other sensitive resources that were not addressed in the RMPs." AR05666. Second, unlike here, in *Northern Plains*, the RMP limited lessors' right to develop the leases to exploratory drilling and small-scale development of coal bed methane. *N. Plains Res. Council*, 298 F. Supp. 2d at 1024. The RMPs here place no analogous limit on the lessors' rights. Third, in *Northern Plains,* once full-field coal bed methane development appeared likely, BLM prepared yet *another* EIS analyzing the impacts of such development. *Id.* The case does not support Defendants' proposition that EISs prepared for decades-old RMPs satisfy BLM's obligation to prepare an EIS at the point there is an irretrievable commitment of resources. In other words, even if a prior EIS addressing impacts of leasing and ensuing development in sufficient detail may meet BLM's pre-leasing NEPA obligation, plainly no such analysis has been undertaken here.

BLM next asks the Court to overturn its correct conclusions of law on the basis that the EA here is somehow different to the EA at issue in *Conner.* BLM argues that "the primary issue in *Conner* was one of timing, and the decision was based on facts that are not present here.*"* Defs.' Oppn. to Mtn. for Reconsideration 4, ECF No. 62. This contention appears based on the fact that the EA at issue in *Conner* found the leasing decision would not result in ground disturbing activity and significant impacts could be avoided through stipulations. *Id.* This is no basis for distinction. First, the content of the EA is irrelevant—because, as a matter of law, the issuance of a non-NSO lease is the point at which BLM loses the power to prohibit all surface disturbance, it is the point at which a substantial question as to impacts arises, which must be analyzed in an EIS. *Conner*, 848 F. 2d at 1451. Second, the EA here is the same as the EA at issue in *Conner* in all respects upon which Defendants argue it should be distinguished. As in *Conner*, BLM here found the leasing decision would not result in ground disturbing activity and significant impacts could be avoided through stipulations. AR01533 ("The proposed action and alternatives are designed to offer lease parcels for sale, and would not have an effect on wetlands or cultural resources at the lease sale or lease issuance stage. If the leases enter into a development stage, wetlands and cultural resources would be

1   further addressed through additional project- and site-specific NEPA analysis"); AR05650 (decision

2   to offer parcels with "standard and additional resource protection stipulations" "will not significantly

3   affect the quality of the human environment"); *Conner,* 848 F.2d at 1446 ("[t]he resulting action for

4   which this environmental analysis is made will be the granting or denying of leases. This, in and of

5   itself, will have no environmental effect. Surface-disturbing activities that are conducted as a result

6   of granting gas and oil leases will be analyzed on a case-by-case basis, and further environmental

7   analyses will be prepared as required by the National Environmental Policy Act;" and "[a]ppropriate

8   standard and special stipulations will prevent or mitigate much of the adverse environmental impacts

9   from oil and gas activities").

10       *Conner* unambiguously rejected BLM's reliance in that case on the rationale that there would

11   be no impacts at the leasing stage and that stipulations would protect against impacts. The Ninth

12   Circuit's holding is clear that neither the existence of mitigating stipulations nor the possibility of

13   additional review at the permitting stage justify the assumption that issuance of a non-NSO lease

14   will avoid the irretrievable commitment of resources and therefore the prospect of impacts requiring

15   analysis. *Connor* concludes that such an approach violates NEPA, not solely as a matter of timing,

16   but also because it precludes BLM from serious consideration of reasonable alternatives, including a

17   no-leasing alternative:

18       In sum, the sale of a non-NSO oil or gas lease constitutes the "point of commitment;"
19       after the lease is sold the government no longer has the ability to prohibit potentially
         significant inroads on the environment. By relinquishing the "no action" alternative
20       without the preparation of an EIS, the government subverts NEPA's goal of insuring
         that federal agencies infuse in project planning a thorough consideration of
21       environmental values. The "heart" of the EIS – the consideration of reasonable
         alternatives to the proposed action -- requires federal agencies to consider seriously
22       the "no action" alternative before approving a project with significant environmental
23       effects. 40 C.F.R. § 1502.14(d) (1985). That analysis would serve no purpose if at the
         time the EIS is finally prepared, the option is no longer available.

24

25   *Conner*, 848 F.2d at 1451.

26       This Court has correctly concluded that an EIS is required when there is an irretrievable

27   commitment of resources, and such commitment occurs when BLM issues a lease that does not

28

1   reserve to BLM the power to deny all manner of surface activity. Plaintiffs do not seek to disturb

2   these conclusions, and therefore do not rehash arguments made at trial. *Cf: Bundorf v. Jewell*, 142 F.

3   Supp. 3d 1133, 1137 (D. Nev. 2015); Defendants' Opposition to Mtn. for Reconsideration 5, ECF

4   No. 62. Plaintiffs seek only that the court reconsider and correct its erroneous conclusions that

5   because BLM retained the power to prohibit all development of the leases there was no irretrievable

6   commitment of resources. With the benefit of the full regulatory context set out in Plaintiffs' Motion

7   for Reconsideration, which Defendants have not challenged, it is clear that those conclusions

8   constitute a clear error of law, properly the subject of a motion for reconsideration. *Allstate Ins. Co.*

9   *v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

10   **CONCLUSION**

11         The Court correctly summarized the significance of the controlling authorities: "any time

12   there has been an 'irretrievable commitment of resources'—i.e. when the government issues a lease

13   that does not prohibit all manner of surface activity—the government must prepare an EIS." Order

14   22, ECF No. 58. The Court erred, however, in concluding that BLM retained the authority to

15   prohibit all manner of surface activity after it issued non-NSO leases, and therefore that an EIS is not

16   required because there was no irretrievable commitment of resources. BLM has long taken the

17   position that it cannot prohibit all surface disturbance once it issues a non-NSO lease, *see* AR05648;

18   AR05682; AR005922, and, tellingly, does not argue to the contrary here. Because BLM cannot

19   prohibit all surface activity, there has been an irretrievable commitment of resources raising

20   substantial questions as to the impacts of the sale, and an EIS is therefore required. BLM's

21   Opposition merely invites the Court into fresh error by arguing the Court should disregard the plain

22   language of controlling law and follow distinguishable district court decisions. The Court should

23   reject this invitation. Instead, it should grant this motion for reconsideration and vacate its order of

24   January 16, 2019; correct its erroneous conclusions that BLM can prevent all surface activity, thus

25   there is no irretrievable commitment of resources and an EIS is therefore not required; and

26   consequently enter judgment in favor of Plaintiffs.

27

28

1    DATED: March 5, 2019                    Respectfully submitted,

2

3

4

5                                            /s/ Julie Cavanaugh-Bill

6                                            _____

7                                            JULIE CAVANAUGH-BILL (NV Bar No. 11533)
8                                            Cavanaugh-Bill Law Offices, LLC
                                             Henderson Bank Building
9                                            401 Railroad Street, Suite 307
                                             Elko, Nevada 89801
10                                           Tel: (775)753-4357
                                             Email: Julie@cblawoffices.org
11

12

13

14                                           _____

15                                           CLARE LAKEWOOD (CA Bar No. 298479),
16                                           *pro hac vice*
                                             MICHAEL SAUL (CO Bar No. 30143),
17                                           *pro hac vice*
                                             Center for Biological Diversity
18                                           1212 Broadway, Suite 800
                                             Oakland, CA 94612
19                                           Phone: (510) 844-7121
                                             Facsimile: (510) 844-7150
20                                           Email: clakewood@biologicaldiversity.org
21
                                             *Attorneys for Plaintiffs*
22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on March 5, 2019, I filed the foregoing Reply in Support of Motion for Reconsideration on behalf of Plaintiffs Center for Biological Diversity and Sierra Club via the CM/ECF system which will provide electronic service to all counsel of record.

DATED: March 5, 2019

_____

CLARE  LAKEWOOD
*Attorney for Plaintiffs*