UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

CENTER FOR BIOLOGICAL DIVERSITY, et al.,

Plaintiffs,

v.

U.S. BUREAU OF LAND MANAGEMENT, et al.,

Defendants.

Case No. 3:17-CV-553-LRH-WGC

ORDER

Plaintiffs, the Center for Biological Diversity and the Sierra Club, have filed a motion requesting partial reconsideration of this Court's entry of summary judgment for the government defendants. (ECF No. 60). Plaintiffs only contest one portion of the Court's summary judgment order, namely the part that found that the Bureau of Land Management ("BLM") was not required to prepare an Environmental Impact Statement ("EIS") following the issuance of certain oil and gas leases in northern Nevada. (*Id*. at 4). They argue that the Court's ruling on the issue was premised on an incorrect reading of BLM regulations and Ninth Circuit case law. (*Id*.)

Although the Federal Rules of Civil Procedure do not explicitly allow for an aggrieved party to seek reconsideration of a court's judgment, federal courts have typically construed such requests as falling under Rule 59(e). A district court may reconsider a prior order only where the court is presented with newly discovered evidence, an intervening change of controlling law, the original decision was manifestly unjust, or where the prior order was clearly erroneous. *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998); *School Dist. No. 1J, Multnomah County v.*

1

*AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Motions for reconsideration are "extraordinary remed[ies]," and they should only be used "sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 887, 890 (9th Cir. 2000). Whether or not to grant reconsideration is within the sound discretion of the district court. *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

Upon a review of the Court's prior order and the relevant BLM regulations, the Court finds that its previous order was premised on an incorrect interpretation of certain BLM regulations and relevant Ninth Circuit caselaw. In the prior order, the Court determined that because BLM still retained the authority to deny a leaseholder's application to drill or mine, BLM had not made the "irretrievable commitment of resources" that would trigger the preparation of an EIS. (ECF No. 58 at 24). But upon further review, Ninth Circuit caselaw mandates that the government analyze the impacts that drilling has on the environment where leases sold were non-NSO (no surface occupancy) leases regardless of any stipulations on the lease. *Northern Alaska Environmental Center v. Kempthorne*, 457 F.3d 969, 976 (9th Cir. 2006). Even if BLM has the authority to deny a leaseholder's application to mine or drill, under the non-NSO leases in this case, it cannot prohibit other manner of surface occupancy, such as constructing a building or road. The government's inability to stop this other non-mining and drilling activity constitutes the "surface disturbing activity" that transforms the government's actions into a "irretrievable commitment of resources," triggering certain obligations. *Id*. The Court had overlooked the possibility of other types of "surface disturbing activities" when it analyzed the gas and oil leases at issue in this case. The Court will therefore reconsider the issue anew here.

Plaintiffs argue that pursuant to *Connor v. Burford*, 848 F.2d 1441 (9th Cir. 1988), whenever BLM or another agency no longer has the authority to prohibit all development on a non-NSO lease, it must specifically prepare an EIS. (ECF No. 60 at 4). And because BLM did not prepare an EIS in connection with the issuance of the non-NSO leases, the Court should grant summary judgment to plaintiffs and remand the case back to BLM for the preparation of an EIS. (*Id*.) On the other hand, BLM argues that it is not always required to prepare an EIS at the oil and

gas leasing stage when there has been an "irretrievable commitment of resources." (ECF No. 62 at 3). But assuming that it must, BLM also argues that two previous EISs created for the Tonopah and Shoshone-Eureka resource management plans ("RMPS") satisfy the EIS. (*Id*. at 4).

The Court first must determine whether BLM was required to prepare an EIS for the non-NSO leases issued in this case. BLM acknowledges its obligation that once it offers non-NSO leases for oil and gas drilling, it must conduct an environmental analysis on the potential effects that oil and gas development would have on the leased land. (ECF No. 62 at 4). It disputes, however, whether it is specifically required to prepare an EIS. (*Id*.) In *Connor*, the Ninth Circuit held that preparation of an EIS was necessary prior to leasing land for oil and gas development in a situation where the Environmental Assessment ("EA") did not sufficiently consider such impacts. *Conner v. Buford*, 848 F.2d 1441, 1450 (9th Cir. 1988). *See also Bob Marshall Alliance v. Hodel*, 852 F.2d 1223, 1227 (9th Cir. 1988) (same). BLM attempts to distinguish *Connor* from the instant case on the basis that in *Connor*, the government had argued that it did not need to comply with the National Environmental Policy Act ("NEPA") because it had the authority to place stipulations on the non-NSO leases. (ECF No. 62 at 5). In the *Conner* EA, the government had taken the position that there would be no impacts to the environment because the leasing decision in and of itself would not have any effect on the environment. *Conner*, 848 F.2d at 1446. But here, BLM continues, it sufficiently analyzed the impacts that oil and gas development would have on the environment within its EA. (ECF No. 52 at 5).

The Court agrees with BLM. Section 102(2)(C) of NEPA requires federal agencies to prepare an EIS before undertaking "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. §4332(2)(C); 40 C.F.R. §1508.11. If the agency finds, based on a less formal and less rigorous EA, that the proposed action will not significantly affect the environment, the agency can issue a Finding of No Significant Impact ("FONSI") instead of an EIS. 40 C.F.R. §1508.13. In other words, NEPA does not require that the government prepare an EIS in every single case, only those where it finds that the proposed plan will have significant impacts on the environment. If Plaintiffs' interpretation of *Conner* and NEPA was correct, then in every situation where BLM was planning on issuing non-NSO oil and gas leases, it would be

3

required to prepare an EIS even if its EA and subsequent FONSI determined that surface development would not have any significant impact on the environment. This is not what NEPA requires. *See Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir. 1998) ("An EA is a 'concise public document that briefly provides sufficient evidence and analysis for determining whether to prepare an EIS or a [FONSI].'") (quoting 40 C.F.R. §1508.9). Plaintiffs' reading would make the process of preparing an EA and FONSI essentially meaningless when BLM issues non-NSO leases for oil and gas drilling. It would also impermissibly take discretion away from BLM and other similar federal agencies when they make determinations of what impacts, if any, certain actions will have on the environment. BLM would be forced to prepare a report detailing how the development of oil and gas infrastructure will have a significant impact on the environment after it previously determined that such development would not have a significant impact.

The Tenth Circuit has noted that after analyzing the relevant statutes and regulations, "assessment of all 'reasonably foreseeable' impacts must occur at the earliest practicable point and must take place before an 'irretrievable commitment of resources' is made." *New Mexico ex rel. Richardson v. Bureau of Land Management*, 565 F.3d 683, 718 (10th Cir. 2009). Nowhere in its *New Mexico* decision did it find that an EIS specifically was always required whenever there was an "irretrievable commitment of resources." In reaching its decision, the Tenth Circuit considered many of the same issues and cases before the Court today, including *Sierra Club v. Peterson*, 717 F.2d 1409 (D.C. Cir. 1983), the predecessor to *Conner* and a case upon which the Ninth Circuit heavily relied in the *Conner* decision. *Id*. at 718. The Court finds the Tenth Circuit's opinion instructive and an accurate interpretation of the operative statute and regulations. In sum, NEPA does not require BLM to create an EIS whenever it issues non-NSO oil and gas leases. It only requires that BLM assess all reasonably foreseeable impacts of issuing such leases prior to issuing those leases because once those leases are issued, BLM no longer has the authority to preclude all surface disturbing activity.

The Court must now determine whether BLM did so in this case. As stated above, the EA prepared by the government in *Conner* never addressed the impact the oil and gas leases would

have on the environment, instead deferring that analysis to a later date. *Conner v. Buford*, 848 F.2d 1441, 1446 (9th Cir. 1988). But that is not the case here. In the Court's previous order, it determined that BLM had sufficiently analyzed the impacts that oil and gas drilling would have on the environment to the extent that the EA satisfied the "hard look" standard. Specifically, the Court stated:

> The administrative record reveals that BLM, using historical information and its experience (as it did in *Northern Alaska*), analyzed in general terms what could happen if a lessee decides to drill for oil and gas and constructs ground disturbing infrastructure. The EA included such analyses of wetlands and riparian zones (AR at 5701), areas with surface waters (AR at 5700), air quality, climate change, and greenhouse gases (AR at 5686–92), soils (AR at 5693–94), various forms of wildlife, including mule deer and pronghorn antelope (AR at 5713–16), wild horses and burros (AR at 5724–25), geology and minerals (AR at 5745–46), and many others. This is precisely the type of hypothetical analysis grounded in historical data and agency experience that the Ninth Circuit approved of in *Northern Alaska*. *See Northern Alaska*, 457 F.3d at 974–75, 977.

(ECF No. 58 at 9). BLM also issued a FONSI following the release of the EA. (*Id*. at 3). Furthermore, the EA also included by incorporation the Tonopah and Shoshone-Eureka RMPs, which contained EISs for their respective areas. (*Id*. 12). Although those EISs are 21 and 32 years old respectively and cannot be relied upon in a vacuum due to their age, combined with the analysis conducted in the EA, they establish that BLM carefully considered the impacts that oil and gas development would have on the leased parcels. And pursuant to the Ninth Circuit's opinion in *Northern Alaska*, BLM was not required to do a site-specific environmental impact analysis at the present stage in the leasing process. *Northern Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 974 (9th Cir. 2006). BLM's analysis was conducted prior to the issuance of the non-NSO leases, which constituted the "irretrievable commitment of resources" in this case. The fact that plaintiffs disagree with BLM on the issue of whether oil and gas development on the leased parcels would have any significant impacts on the environment is not a basis for them to demand the production of an EIS.

///

///

///

IT IS THEREFORE ORDERED that Plaintiffs' motion for partial reconsideration (ECF No. 60) is **GRANTED** in accordance with this order.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment (ECF No. 45) is **DENIED**.

IT IS FURTHER ORDERED that BLM's cross-motion for summary judgment (ECF No. 52) is **GRANTED**.

IT IS FURTHER ORDERED that the Clerk of Court shall enter judgment in favor of the defendants, the United States Bureau of Land Management, Ryan Zinke, and Michael Nedd, and against plaintiffs the Center for Biological Diversity and the Sierra Club

IT IS SO ORDERED.

DATED this 15th day of August, 2019

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE